UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

PAUL CHATMAN,            )
   Plaintiff,            )
                         )
vs.                      )           No. 15-1228
                         )
GREG GOSSETT, et al.,    )
   Defendants            )

MERIT REVIEW ORDER

This cause is before the court for merit review of the Plaintiff's complaint. The court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

The Plaintiff, a pro se prisoner, claims his constitutional rights were violated at Illinois River Correctional Center by Warden Greg Gossett, Sergeant Konklin and Officer Bryant. Plaintiff says Defendant Konklin and Bryant conducted an 'unconstitutional strip search" on two occasions. First, on December 20, 2013, the Defendants conducted a strip search in an area which had glass on two sides and was visible to other inmates and staff members. Plaintiff also maintains the area was cold and "unsanitary." (Comp., p. 2). Plaintiff claims he developed a sore throat after the strip search due to the cold conditions.

Second, Defendant Konklin conducted a strip search in the bakery office on either December 27 or 28, 2013. Plaintiff maintains the Defendant intentionally left the door and blinds open.(Comp, p. 2). Plaintiff says there were other inmates working in the area at the time of the search. While not clearly articulated in the body of his complaint, Plaintiff states in his

1

attached grievance that he believes the searches were not based on security needs, but instead intended to punish and "demoralize." (Comp., Griev., p. 5).

"There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella,* 319 F.3d 936, 939 (7th Cir.2003). "[O]nly those searches that are maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional." *Whitman v. Nesic,* 368 F.3d 931, 934 (7th Cir.2004). Therefore, a search of a prisoner may violate the Eighth Amendment if it is "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun v. Detella,* 319 F.3d 936, 939 (7th Cir.2003).

However, inmates have very limited Fourth Amendment rights in terms of privacy. *See Hudson v. Palmer,* 468 U.S. 517, 527–28, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)("[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."); s*ee also Johnson v. Phelan,* 69 F.3d 144, 146 (7th Cir.1995) ('privacy is the thing most surely extinguished by a judgment committing someone to prison. Guards take control of where and how prisoners live; they do not retain any right of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life.").

Nonetheless, the Seventh Circuit has "recognized that the Fourth Amendment continues to protect some very limited degree of privacy in prisons, at least when it comes to strip-searches, even if that protection is significantly lessened by the very real dangers of incarceration." *King v. McCarty*, 781 F.3d 889, 903 (7th Cir. 2015); see also *Peckham v. Wisconsin Dep't of Corrections,* 141 F.3d 694, 697 (7th Cir.1998)(prisoners retain some

protection "under the Fourth Amendment against unreasonable searches and seizures"); *Canedy v. Boardman,* 16 F.3d 183, 185 (7th Cir.1994) ("those who are convicted of criminal offenses do not surrender all of their constitutional rights"). Consequently, the Seventh Circuit has "allowed prisoners to proceed on Fourth Amendment challenges to bodily searches instead of dismissing their claims." *King,* 781 F.3d at 903 *citing May v. Trancoso,* 412 Fed.Appx. 899, 904 (7th Cir.2011)(affirming summary judgment for defendants; prisoner drug test was not unreasonable); *Forbes v. Trigg,* 976 F.2d 308, 312 (7th Cir.1992) (affirming summary judgment for defendants in case challenging requirement that prisoner produce urine for drug test, but noting that "inmates retain protected privacy rights in their bodies"). Therefore, at this early stage, the court will allow the Plaintiff to proceed with his claim alleging the two searches violated both his Eighth and Fourth Amendment rights.

However, the Plaintiff may only proceed with this claim against the two officers who conducted the searches: Sergeant Konklin and Officer Bryant. The Plaintiff has not alleged any involvement by Warden Gossett and a defendant cannot be held liable under 42 USC §1983 unless a plaintiff can demonstrate that the defendant caused or participated in the alleged constitutional violation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982). In addition, the mere fact that a defendant was a supervisor is insufficient to establish liability because the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under 42 USC §1983. *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992).

The court notes Plaintiff claims the first search was conducted in an unsanitary, cold environment and he later became sick. However, Plaintiff has not alleged the kind of extended search in cold conditions which might lead to a separate claim. Nonetheless, the fact that the search was conducted in these surroundings is evidence the Plaintiff may present in support of

his allegations. *See Mays v. Springborn,* 719 F.3d 631, 634 (7th Cir.2013)(strip search conducted in a "freezing" basement room, by guards who wore dirty latex gloves and who made demeaning comments to the prisoners).[1]

The Plaintiff is also advised his damages may be limited in this case. The Prison Litigation Reform Act states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. §1997e(e). "The absence of an alleged physical injury does not bar the action altogether, but rather functions as a limitation on available relief: the plaintiff cannot recover compensatory damages for mental or emotional injury." *Agrawal v Briley* 2006 WL 3523750(N.D. Ill. Dec. 6, 2006*); see also Calhoun v Detella*, 319 F.3d 936, 940 (7th Cir, 2003)("physical injury is merely a predicate for an award of damages for mental or emotional injury, not a filing prerequisite for the federal civil action itself." ). Therefore, in the absence of physical injury, the Plaintiff in this case may only recover nominal and perhaps punitive damages. *Calhoun*, 319 F.3d at 941-42.

The Plaintiff has filed a motion for appointment of counsel. [6] In considering the Plaintiff's motion, the court asks: "(1) has the indigent Plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007), *citing Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir.1993). The Plaintiff has attached to letters he received from attorneys denying his request for representation. Both letters are dated more than a year before he filed this lawsuit. Even if the court were to find this

---

[1] Plaintiff's complaint mentions the conduct of individuals who handled his grievance, but he does not name these individuals as Defendants, nor does he clearly state constitutional violations. Therefore, the court will not consider these claims as separate allegations.

is a reasonable attempt to find counsel, the Plaintiff has one claim before the court which is not complex. Based on his complaint and grievance, he is capable of explaining how the searches were conducted and why he believes Defendants violated his constitutional rights. In addition, once the Defendants have been served, the court will enter a scheduling order which provides important information for a pro se litigant and requires the Defendants to provide relevant discovery. Therefore, based on the available record, the motion is denied.[6]

IT IS THEREFORE ORDERED that:

1) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the court finds the Plaintiff alleges Defendant Konklin and Bryant violated his Eighth and Fourth Amendment rights based on two strip searches. The claim is stated against the Defendants in their individual capacities only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel. The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Dismiss Defendant Warden Greg Gossett for failure to state a claim upon which relief can be granted pursuant to by 28 U.S.C. §1915A; 2) deny Plaintiff's motion for appointment of counsel [6]; 3) Attempt service on Defendants pursuant to the standard procedures; 4) set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; and, 5) enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED this 6th day of October, 2015.

s/ Joe Billy McDade
_____
JOE BILLY MCDADE
UNITED STATES DISTRICT JUDGE